Mr. Maloney. Thank you, Your Honor. May it please the Court, I represent the plaintiff appellants here who were victims of government negligence not once but twice. First, when a drunken army soldier drove his army truck across the W.O. line and had a head-on collision with Mr. James Nutt Sr., killing him. He left behind a young widow and a two-year-old son. The government correctly settled that case fairly quickly. The second victimization that my clients have experienced at the hands of the government was the breach of the settlement agreement. We've got a contract issue. We have a contract issue, that's right, Your Honor. The Federal Tort Claims Act was a final and conclusive settlement. What is pending before the Court today is a breach of that settlement agreement, a breach of contract. And as this Court has held many times, the analysis begins with the four corners of the document, you look at the language, determine whether or not it's plain and unambiguous. Yeah, and your problem, it seems to me, is that unlike the Massey case, there is language here saying that the payments that the government is going to make to your client and to the insurance company and to the lawyers was a complete settlement. That language does not appear in the Massey agreement. This is on page 27. Page 27 of the appendix, and that's setting forth a provision from the agreement. That's what's labeled 11 in the left-hand column. It says the payments by the United States set forth above shall operate as a full and complete discharge of all payments to be made. That's right. The payments that are listed up above are payments to the insurance company, initial payments to the client, and so on and so forth. Well, Your Honor, it is substantially the same as the contract that we saw in the Massey case. What that's referring to is... That language does not appear in the Massey contract. I understand, Your Honor. That language that you just read speaks to payments being all the payments above, which include the periodic payments that are an express material part of this contract. So that includes the lump sums that you referred to. It also includes the periodic payments. They use the mandatory language of... Well, I don't think it includes the periodic payments because it's saying the payments by the United States. That's right. This is a contract... The United States is making a payment to the insurance company, right? Well, it doesn't say who the insurance company is going to be or how much they're going to pay the insurance company. The express terms of this contract, and the contract is only between the government and the Nutt family, not the insurance company. They're not part of this contract. Well, the contract says that they'll have standing to sue the insurance company. That's right. They would have standing to sue, but it does not say the government's off the hook. In other words, it doesn't say you give up your rights to sue us here. If they wanted that, they should have said that. They should have expressed that in the contract. They didn't do that. Has the insurance company been sued? The insurance company's out of business. They liquidated. There's no point in doing that. They took all their funds and put it into a receivership. This family's getting about 45% of the money that was promised to them, and it was expressly articulated in these periodic payments in this contract. How do you deal with the fact that the Massey case, in that case, the contract twice had language about how the payments were guaranteed, and it said it not once, but twice, I think. How do you deal with that, in the absence of any similar language in the contracted issue here? Well, we do have similar language about, I think, approximately half a dozen times. It says that the Nutt family shall be paid. It says the government and the annuity that they get will pay. It doesn't tell the Nuts or anybody that reads this contract what happens if the insurance company defaults, other than they have the right to sue that insurance company. The United States would also be involved in the litigation. That's correct. They may have the ability to delegate, but that doesn't remove their obligation. If I could read just a quote from the Massey opinion, Judge Mayer actually wrote it, and it was a great analysis. It says, we cannot agree with the government's interpretation. And the court was looking at the interpretation of the contract, very, very similar language here, which is no surprise. It's the same defendant and the same people that are writing these contracts, and using the same broker, and using the same annuity company. And the court said, the language specifying that the annuity will result in distributions, we have that in our case, and that the disbursements shall be paid, we have that language in our case, is unambiguously mandatory and says unequivocally that the Masseys must receive the payments. We have that language in our contract. The government urges an interpretation of these terms that is at odds with their plain meaning. Because the payments are mandatory, the government must be responsible for their payment. No one else is a party to the agreement. Although the government may delegate its duties under the agreement to another entity, such as executive life insurance company, this delegation does not absolve it of its obligations. I couldn't have said it any better. That is exactly what we have here. The language is substantially the same. It shows a mandatory obligation. If there is a latent ambiguity this court's already held, that's going to be construed against the drafting government party in this case, not against the nuts. The interpretation that... Yeah, but we've said that canon is a last resort if you can't figure out what the meaning of it is without it. That is true, Your Honor. I think that you don't need to go that far. I don't think you need to look at plural evidence here. I think if you look at the plain meaning of the language here, it's mandatory and obligatory. Exactly the same language on these particular terms was used in the Massey decision. The government in this case is trying to distinguish Massey by saying, well, this is a Federal Tort Claims Act case. That was a Military Claims Act case and there's a difference. I think it's a distinction without a difference. The government came to this court in the Massey case and argued the court didn't have jurisdiction because it was a Military Claims Act case. The court said, we're not disagreeing with that, but this is no longer a Military Claims Act case. This is now simply a breach of contract case. That's what we have here today. It's no longer a Federal Tort Claims Act case. That claim was extinguished. There was a final judgment on it and now we have simply a breach of contract. And I think you need to look no further than the terms that were used in the contract itself and the meaning, certainly the intent. Even the government wouldn't argue the intent was otherwise. The intent was to make sure that she was guaranteed payments under the schedule that's expressly articulated in the contract. That's certainly what the Nutt family, how they read it, how the lawyer that represented them at the time read it, and I think even how the government read it. What is unsaid here is what happens in the case of default in terms of the government's obligations. This court has already ruled on that in the Massey decision because those terms are substantially the same terms that we see here. You had striking similarities as a personal injury. The Massey case was a personal injury case against the Navy for a Navy doctor. We have an Army official here who was negligent. In the Massey case, they purchased an annuity. The total amount was unknown, same as we have here. They didn't discuss what the purchase price of the annuity was in the contract in Massey, nor did they say that here. They're substantially the same. The Massey decision is binding on the government and the court below in this case. I can address some of the other government's arguments, but I don't think we get to those. We need not get to those unless the court believes that plural evidence is necessary, and according to that, I'd like to reserve the rest of my time for rebuttal. Okay, thank you. Mr. Majerus? Thank you, Your Honor. Let me tell you, I'm a little troubled by your brief because you cite a couple of cases for the proposition that under the Federal Tort Claims Act and cases involving settlements that it can't be paid in installments, and you cite the Riley case and the Vantafoy case. Those cases specifically say that you can structure a settlement with payments over time. So long as we... You didn't disclose that in your brief, which I think is an obligation that you had. Yes, Your Honor, and we weren't intending to mislead the court. What those cases held is that once the government's obligation is extinguished, the courts can then fashion a periodic remedy through installment payments, through a trust created by the court, and if I could direct your court specifically to the cases you referenced. They say Riley says periodic damages of words are permissible in lieu of lump sums in certain situations. And it also says such an outcome can be achieved by agreement of the parties. It also says, though, that Congress has never enacted legislation permitting the routine imposition of structured payments. I don't think you're addressing my point. These cases say specifically that you can have a structured settlement with payment over time, right? They do if the government's obligation is extinguished at the time of settlement or judgment. And that's consistent with what the Hull case said, Hull by Hull, which is 971 Federal Register 2nd, 1499. They said, we agree the courts cannot subject the government to ongoing obligations like the continuing payments. Those cases say the government can agree to make payments over time itself, right? They say what they stand for is that the court. No, answer my question. Those cases say that the government can structure a settlement whereby the government is obligated to make payments over time, right? Only if the obligation of the government is extinguished at the time of judgment or settlement. What obligation? The obligation to pay over time is not extinguished. The Federal Tort Claims Act has been interpreted by virtually every circuit in the country to say. Well, I think you understand my point. I think that it was not appropriate for you to fail to recognize that those cases are potentially inconsistent with your position. But go ahead with your argument. My apologies, Your Honor. That was not our intent. The distinction in Frankel the court held that unless Congress authorizes a different type of award, the only type of damages under money damages under Section 1346 can be lump sum payments that satisfy the maximum financial obligation at the time of judgment and settlement. But you can enter into a settlement that provides for payment over time, and that's all that's involved here. You cannot because of 28 U.S.C. Section 2672. That statute says that settlements can only be paid like judgments. The circuits across the country. My apologies, Your Honor. Go ahead. The circuits have held across the country that the money damages in Section 1346 can only constitute damages that result in the maximum financial obligation of the government extinguishing a judgment and settlement. Now, courts later, as Your Honor noted, like Riley and Hole v. Hole, and also Cibula, which we cite, they allowed for installment payments as long as the government's financial obligation was extinguished. Their obligation to make the installment payments is not extinguished? What are you talking about? Because they all say, just to give a few examples, again, Riley says, Congress has never enacted legislation permitting routine imposition of structured payments on the government. Hole v. Hole, again, said the courts cannot subject the government to ongoing obligations. And then in discussing the Frankel case, which is the seminal case in this line, they noted that two rationales were employed there, and they adopted them, the primary one being that the Federal Waiver of Sovereign Immunity, and I'm quoting from the case, under the FTCA incorporates the traditional common law principle that awards and civil suits must take the form of common law money judgments. So in terms of structuring payments down the road, these cases I've held, yes, there can be installment payments, but the government's obligation has to be extinguished at the time the case is over. Well, not to make the installment payments, right? They say you can agree to make installment payments. Those are payments by the government. The obligation to make the installment payments is not extinguished. And they're done as a remedy to assist and to provide payments periodically, but that doesn't change the fact that under the FTCA the government's obligation has to be finished at the time of settlement and judgment. Well, except where there's a settlement, and then they can agree to make payments over time, and if they don't, they can be sued. Those cases recognize that explicitly.  Treated the same way as judgments. Congress has explicitly held that in settling, Congress, or excuse me, the Attorney General cannot do remedies in addition or different than what a court can do in a judgment. All of these courts have held, though, that the damages have to be finalized and discharged at the time of settlement or judgment. And this is consistent with how the FTCA has been handled throughout history, and that's the important context that distinguishes this case from Massey. As we noted in our briefs, back in the 40s and 50s, in order for settlements and judgments to go through, there had to be supplemental appropriations from Congress. Congress had to sign off on these judgments. Now, things were harmonized with Section 2414 in order to say that settlements have to be treated like judgments. But because judgments have to be, you know, the obligation for the government has to be extinguished at the time of settlement and judgment. The cases say you can have a settlement with periodic payments, and if the government doesn't make the payments, it can be sued. And they say that's exactly what's going on here in this case. Now, you may say the language of the contract is different or the settlement agreement was different than it was in Massey. Maybe that's an argument. But I do not see, in the light of these authorities, how you can say that the government can't enter into an agreement for payment over time and be sued if it breaches that agreement. I don't understand how you can possibly say that. Well, and there's a critical distinction between those cases that I think the court should keep in mind. This case involved the purchase of an annuity, and this ties back to the terms in the settlement agreement. A huge distinction between the FDCA and the Military Claims Act is that at the negotiating table, if the parties don't want an annuity, they can go to court and they can pursue a claim before court. The Military Claims Act doesn't allow that at all. If they don't receive money from the designated Department of Defense authority to resolve their case, they have no remedy. And it's a critical distinction in this case because what happened here is the parties wanted to have an annuity that would make payments down the road. But under the FDCA, and historically this has always been the case, the government cannot agree to guarantee obligations down the road. So we agreed to buy an annuity, a low-risk, highly-rated annuity, that would make the payments. At the time, nobody thought the DONY would go under, and it's very unfortunate that it did for everyone. But the government could only agree to lump sum payments at the time of judgment of settlement. How could you say that? I just pointed out to you how the cases say you can enter into a settlement in which the government agrees to make periodic payments. And that's exactly what they say happened here. There was a settlement, the government agreed to make periodic payments, and it's liable. And those cases say that's fine, there's nothing wrong with that. You may dispute whether that's what the agreement says, but if the agreement does say that, there's nothing wrong with it. Respectfully, Your Honor, that's not what the cases say. They all indicate clearly that Congress has not authorized the government to guarantee payments down the road. And I think that's the critical distinction here. Frankl v. Himes explicitly held that, and courts like Riley and Askew and Hole by Hole have gotten creative in creating mechanisms to allow for installment payments, but that doesn't change the fact that the government's obligation has to be extinguished at the time of settlement or judgment. And that's entirely consistent with the terms of the agreement. As Your Honor pointed out, the agreement says that the United States agrees to purchase annuities which will provide the following. It says which, not that. It notes that if the insurance company goes under, that the plaintiff or the appellant has standing to sue and that the government will assist in those efforts. It indicates the government will purchase a low-risk annuity, which costs the government more. I mean, if the government was the guarantor, why would that provision be in there? And then the most convincing provision, in my mind, if you look at page 827, specifically it's paragraph 14, as noted in the appellant's notations in the agreement, it says the United States will furnish to the offerees through their attorney a certificate of insurance or other evidence of the purchase by the United States of annuities in an amount sufficient to satisfy those obligations of the United States under this settlement agreement, which are to be satisfied by the purchase of annuities. Under the appellant's interpretation, these provisions are nonsensical or just have no meaning, and I respectfully submit that the court is obligated to interpret this agreement to give meaning to all the provisions that are in effect. Okay. Anything further? Thank you. I'll be very brief, Your Honor. The government's taken inconsistent positions over the periodic payments. They've asked for a revisionary trust. The Federal Tort Claims Act clearly allows for it. There's no case that they've cited that says it doesn't. So just commenting on the last point on the language of the contract itself, with respect to the certificate of insurance or the purchase, there's no question that the contract lets everyone know that the government's going to be purchasing an annuity from a life insurance company. That's in there, and that's all that that is referring to. There's an obligation to the government saying, we're going to get you a good policy, we're going to get one from an excellent or A-plus company. Now, if they didn't use an A-plus or excellent company, that would be a separate breach. I suspect here that executive life was not what it said it was, but even if it was at the time, that is an obligation that the government is saying, we're going to take on that obligation. They didn't involve the plaintiffs in this selection. It was a unilateral decision by the government lawyers on who they were going to select and who they used, and they went to their go-to broker and their go-to life insurance company for a period of a few years in the 1980s. And unfortunately, they did a poor job in their due diligence in selecting that company. But now it shouldn't be the plaintiff's fault, it shouldn't be an innocent party who had nothing to do with selecting that life insurance company. And there was, just as an aside, because I think this sort of touches on it in the government's brief, they talk about some parole evidence here, and that is there was a question about whether or not there should be insurance taken out on the life insurance agreement. The plaintiffs weren't allowed to do that because the policy was owned by the United States government. Only the government could take out a separate insurance on the life insurance policy, not the plaintiffs. So this is merely an instruction similar to what the court held in Massey, an instruction to JMW Settlements, Inc., to make sure that they selected correctly, just as we saw in the Massey decision. Unless there's any further questions, I'll conclude by saying if there's one party that should always make good on the promises, it should be our government. A government by the people and for the people. And this court should compel the government to live up to its obligations and reverse the lower court's decision and remand for further findings on damages. Okay. Thank you, Mr. Maloney. Thank you, both counsel. The case is submitted. That concludes our session.